UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOEL RODRIGUEZ,

    *Plaintiff*,

*v*.　　　　　　　　　　　　　　　CASE NO. 09-CV-13268

COMMISSIONER OF　　　　　　　DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,　　　　　　　MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.　RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.　REPORT

#### A.　Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 17, 66.) Plaintiff has no relevant employment history from the past 15 years; he worked as a laborer from 1980 until 1985. (Tr. at 81.) Plaintiff last worked in 1985. (*Id.*)

Plaintiff filed the instant claims on May 20, 2004 (DIB and SSI), alleging that he became unable to work on January 1, 2001 (DIB) and on May 5, 2004. (SSI). (Tr. at 66, 71-I.) The claims were denied at the initial administrative stages. (Tr. at 38, 71-E.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, and muscle/ligament disorder and fascia as possible bases of disability. (*Id.*) On December 6, 2006, Plaintiff appeared before Administrative Law Judge (ALJ) Joel Fina, who considered the application for benefits *de novo*. (Tr. at 14-26.) In a decision dated March 15, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) The ALJ also noted that a previous claim was denied, and review was not sought, on August 12, 2002; thus, the decision of August 12, 2002, is administratively final. (Tr. at 17.) Accordingly, under the principle of *res judicata*, Plaintiff is precluded from alleging a disability onset date on or prior to August 12, 2002, i.e., the earliest Plaintiff can be found disabled is August 13, 2002. (Tr. at 18.) The parties do not dispute this conclusion. Plaintiff requested a review of this decision on March 22, 2007. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 17, 2009, when, after the review of

2

additional exhibits[2] (Tr. at 265-712),[3] the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) On August 19, 2009, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

B. **Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

[3]The exhibits are comprised of records from the Veteran's Hospital in Saginaw dated January 11, 2001 through May 30, 2006.

2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.  Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2002, and had not engaged in substantial gainful activity since August 13, 2002. (Tr. at 20.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and cervical spine, fibromyalgia, carpal tunnel syndrome on the left, mood disorder with depression due to chronic pain syndrome, and left shoulder impingement were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 24.) At Step Five, the ALJ determined that Plaintiff retained the residual functional capacity to perform a significant range of unskilled, light work. (Tr. at 20-24.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 26.)

### E. Administrative Record

A review of the relevant medical evidence, contained in the administrative record indicates that Plaintiff was treated by Mubashir Hussain from September of 2002, M.D., for back pain, knee pain, hypertension, depression, and fibromyalgia. (Tr. at 125-43.) During that same time period, Plaintiff was also treated for mood disorder with depression due to chronic pain syndrome with Kaushik J. Raval, M.D.. (Tr. at 126-35, 242-.)

Plaintiff underwent nerve block treatment for back pain in July of 2002. (Tr. at 144.) X-rays taken in July of 2002 showed "no significant abnormality" of the cervical spine. (Tr. at 151.)

In January of 2003, Plaintiff was discharged from the Pain Clinic stating that "his pain is relatively well controlled with the Tylenol With Codeine and salsalate." (Tr. at 139.)

Chest x-rays taken in March of 2003 showed "no active disease." (Tr. at 150.) X-rays taken in April of 2003 showed a "large joint effusion" of the knee with normal joint spaces, alignment, bony structure, and normal soft tissues. (Tr. at 149.) Chest x-rays taken in September of 2003 showed "no active lung process." (Tr. at 149.) X-rays taken in November of 2003 showed "no significant abnormality" on the right knee. (Tr. at 148.) X-rays taken in December of 2003 showed a "small plantar heel spur" on the right foot/ankle. (Tr. at 147.)

As of April of 2004, Dr. Hussain was unable to "find any association with his knee problem with his multiply [sic] aches and pain in the back region...I believe the patient multiply [sic] aches and pains are due to his fibromyalgia." (Tr. at 125.)

A Psychiatric Review Technique conducted in May of 2004 concluded that Plaintiff 's affective disorders and somatoform disorders were "not severe" and that there are "coexisting nonmental impairment(s) that require referral to another medical specialty." (Tr. at 214.) It was further explained that Plaintiff was "less depressed on Zoloft" and that the nonmental medically

8

determinable impairment is "chronic pain" syndrome. (Tr. at 217, 220.) There were no "B" or "C" criteria noted. (Tr. at 221-27.)

In July of 2004, Plaintiff was issued ankle braces, in addition to orthoses, to stabilize his ankles and help Plaintiff weight bear more evenly. (Tr. at 252-54.)

In August of 2004, Dr. Hussain noted that Plaintiff's x-rays were "basically unremarkable expect for a calcaneal spur" and that he was unsure whether Plaintiff's knee problem affects his ankle, adding that he "can only state the patient is requesting a higher compensation and pension, higher service-connected disability from the current 30% he is receiving, and it is up to the Compensation & Pension Board to review the case and determine whether the ankle problem is related to his knee." (Tr. at 250.) At the same time, Dr. Raval noted that Plaintiff reported he was "less depressed on Zoloft" but was "concerned about not getting workmen's compensation." (Tr. at 250.)

In November of 2004, x-rays of Plaintiff's ankles showed the same heel spurs and x-rays of Plaintiff's knees showed "no significant abnormality." (Tr. at 255-56.) The podiatrist at the Veteran's hospital concluded, in November of 2004, that Plaintiff's "condition has remained stable with no increase in disability" and that it "is not likely as [sic] that the right ankle is secondary to his bilateral knee condition." (Tr. at 247.)

In June of 2005, x-rays revealed bilateral spurs with the spur on the right side being the larger of the two. (Tr. at 236.)

In July of 2005, Plaintiff was diagnosed with "personality traits with somatizing features" but the examiner noted that Plaintiff "does not appear mentally ill...the [Plaintiff's] dysthymia is appropriate to the nature and severity of his relatively immobilized condition and is therefore not a separate psychiatric illness." (Tr. at 233.) At that same time, Plaintiff was diagnosed with

"[m]ild degenerative arthritis of both knees," and "d]egenerative arthritis of the mid-thoracic and lumbar spine." (Tr. at 235.) X-rays taken at this time showed "mild degenerative changes" in the left shoulder, "mild degenerative changes bilateral knee joints," "no acute subluxation" in the spine, no spondylolysis or spondylolisthesis, but "advanced degenerative changes involving the mid to lower thoracic spine," at L4-5 and L5-S1. (Tr. at 237-41.)

Dr. Raval noted, in 2005, that Plaintiff "reports he is less depressed on Zoloft" and "seems to be able to take care of his ADL [Activities of Daily Living] fairly well." (Tr. at 244-45.)

Plaintiff sought treatment with Arvind Kumar, M.D. in May of 2006 and, at that time, Dr. Kumar concluded that Plaintiff has major depression, current and chronic pain, and that "since the patient suffers from depression, he is unfit to any gainful activity at this time." (Tr. at 262.) Dr. Kumar also provided a Medical Source Statement indicating that Plaintiff is markedly limited in his ability to relate and interact with supervisors and co-workers, his ability to remember and carry out an extensive variety of technical and/or complex job instructions, in his ability to deal with the public, and his ability to maintain concentration and attention for at least two hours. (Tr. at 264.) Dr. Kumar also found Plaintiff was extremely limited in his ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. (Tr. at 264.) However, Dr. Kumar also found that Plaintiff was not significantly limited in his ability to understand, remember and carry out simple one-or-two step job instructions or to handle funds. (Tr. at 264.)

Plaintiff testified that although he has not worked since 1985, he and his wife owned five rental homes that Plaintiff did "some" maintenance on but that these homes were sold when he and his wife divorced. (Tr. at 722-23.) Plaintiff testified that he is able to care for his own personal needs, lives alone in a house, has a driver's license with no restrictions on it, owns a vehicle, and

is able to drive himself to the Veteran's Hospital but he cannot wash his own dishes, cook, sweep or vacuum the house, do his own laundry, or shop for food. (Tr. at 721-22, 724-27.) In response to questions from the ALJ, Plaintiff also testified that he is able to get milk out of the refrigerator, put it on the counter, and pour himself a glass, which he uses when he takes his medications. (Tr. at 734.) Plaintiff goes outside "when it's nice" and walks "up and down the sidewalk," he visits his siblings, and watches basic cable television. (Tr. at 727-29.) Plaintiff also testified he is able to lift "a good five or 10 pounds" and can sit for "maybe 30-40 minutes." (Tr. at 730.) Plaintiff testified that he gets along well with family and neighbors and that when he was working, he got along well with co-workers, that crowds do not disturb him, and that he generally finishes what he starts but may forget something, e.g., a spoon when he went to the kitchen and brought out a bowl of cereal. (Tr. at 746-47.) In response to Plaintiff's attorney's question, Plaintiff indicated that he naps twice a day for "within an hour." (Tr. at 747.) Plaintiff further testified that he uses a cane "most of the day to get around in the home" ever since "he first got injured on [his] knee." (Tr. at 748.)

The Vocational Expert (VE) testified that the jobs she would describe exist in the lower half of Michigan. (Tr. at 749.) The VE asked the ALJ to inquire further with the Plaintiff regarding his work keeping the rental homes and Plaintiff testified that he had owned the four single-family homes that rented out for two to three years, around ten years ago. (Tr. at 750.) Plaintiff was able to purchase the homes free and clear of any mortgages with the $50,000 worker's compensation settlement he received from General Motors. (Tr. at 751-52.) Plaintiff stated his wife handled all the paperwork, rent money collection, and that they hired a handyman so he never visited these houses when he owned them at all. (Tr. at 752-53.) The VE then found that Plaintiff had not engaged in any substantial gainful activity in the past 15 years. (Tr. at 754.)

The ALJ asked the VE to assume a person with Plaintiff's background:

> who is able to perform a significant range of unskilled light work activity that allows for a sit/stand option and occasional lifting up to 20 pounds and 10 pounds on a frequent basis. However, this person would avoid work activity that requires overhead work and any repetitive pushing, pulling, bending, twisting, or turning.

(Tr. at 754.) The VE testified that such a person could perform work as a light packer, information clerk or production assembler, all of which exist in significant numbers in the regional and antional economies. (Tr. at 755.) The VE was next asked to assume a person with Plaintiff's background:

> who is able to perform these same limitations, and I'll repeat them, a significant range of unskilled light work activity that allows for a sit/stand option and occasional lifting up to 20 pounds and 10 pounds on a frequent basis. This same person would avoid activity that requires overhead work and any repetitive pushing, pulling, bending, twisting or turning. And in addition, he would be limited to work, which is limited to simple, routine and repetitive tasks.

(Tr. at 755.) The VE testified that Plaintiff would be able to perform the same available jobs listed for the first hypothetical . (Tr. at 755-56.) When the ALJ asked whether a person who used a cane continuously could perform the jobs previously described, the VE responded that such a person could perform the majority of the jobs listed, and then provided a detailed list. (Tr. at 757-59.) The VE also testified that absences of more than two days per month, or a requirement that the person be allowed to nap twice a day for up to an hour would effectively eliminate all jobs. (Tr. at 759-60.) Finally, the VE testified that the jobs she cited were consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 760.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform a significant range of light work. (Tr. at 20-24.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ did not properly evaluate the medical records evidence thereby creating a hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 11 at 6-13.) Plaintiff also contends that Dr. Kumar's medical source statement, which found Plaintiff was not employable, should not have been discounted by the ALJ. (Doc. 11 at 9-11.) Plaintiff further argues that the ALJ failed to consider other severe physical impairments born of the medical evidence, i.e., heel spurs, knee pain and back pain. (Doc. 11 at 12-14.)

    a.    **Weight given to treating source opinions**

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not

14

inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," I suggest that Dr. Kumar's conclusion that Plaintiff is unable to work was properly discounted by the ALJ. *See Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ's decision to not give controlling weight to Dr. Kumar's underlying opinions, i.e., limitations noted in the psychiatric review technique, was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

I note, at the outset, that although Plaintiff was treated at the VA Hospital, it is unclear whether Dr. Kumar ever saw Plaintiff before the time, in May of 2006, that he examined Plaintiff and concluded Plaintiff could not work. (Tr. at 262.) Even assuming Dr. Kumar can be considered a treating physician rather than an examining physician, I suggest that his underlying findings regarding Plaintiff's limitations were properly discounted by the ALJ. Dr. Kumar's opinion of May of 2006 does not contain "well-supported" "medically acceptable clinical and laboratory diagnostic techniques" and it is, I suggest, "inconsistent with the other substantial evidence in [the]

case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

For instance, although Dr. Kumar indicated that Plaintiff is markedly limited in his ability to relate and interact with supervisors and co-workers and the public (Tr. at 264,) Plaintiff testified that he gets along well with family and neighbors and that when he was working, he got along well with co-workers, and that crowds do not disturb him. (Tr. at 746-47.) Although Dr. Kumar found marked limitations, another examiner found that Plaintiff "does not appear mentally ill" (Tr. at 233,) and another Psychiatric Review Technique conducted in May of 2004 concluded that Plaintiff 's affective disorders and somatoform disorders were "not severe." (Tr. at 214.) Plaintiff himself reported to his treating physician, Dr. Raval, that he was "less depressed on Zoloft" and Dr. Raval noted that Plaintiff "seems to be able to take care of his ADL fairly well." (Tr. at 220, 244-45.) The marked and severe limitations given in Dr. Kumar's treating source statement are unique in the record[4] and thus, I suggest are inconsistent with the substantial evidence of record. I therefore suggest that the ALJ properly discounted Dr. Kumar's ultimate and underlying opinion.

b. **Other impairments**

Plaintiff contends that the ALJ did not properly evaluate the medical records evidence thereby creating a hypothetical that did not accurately portray Plaintiff's psychological and other impairments i.e., heel spurs, knee pain and back pain. (Doc. 11 at 6-13, 12-14.) The regulations do require an ALJ to consider all medically determinable impairments together if any one impairment is found to be severe. *See*, 20 C.F.R. §§ 404.1523 and 416.923.

---

[4]I note that in the hypothetical posed to the VE, the ALJ incorporated Dr. Kumar's finding that Plaintiff was not significantly limited in his ability to understand, remember and carry out simple one-or-two step job instructions or to handle funds. (Tr. at 264, 755-56.)

The hypothetical required unskilled light work activity that allows for a sit/stand option and further required that the job did not entail overhead work and any repetitive pushing, pulling, bending, twisting or turning. (Tr. at 755.) The hypothetical also took into account the need for Plaintiff to continuously use a cane. (Tr. at 755-59.) I therefore suggest that the hypothetical provided for the limitations supported by the medical evidence of record.

As to Plaintiff's back issues, x-rays taken in July of 2002 showed "no significant abnormality" of the cervical spine. (Tr. at 151.) In January of 2003, Plaintiff was discharged from the Pain Clinic stating that "his pain is relatively well controlled with the Tylenol With Codeine and salsalate." (Tr. at 139.) X-rays taken in April of 2003 showed a "large joint effusion" of the knee with normal joint spaces, alignment, bony structure, and normal soft tissues. (Tr. at 149.) However, x-rays taken in November of 2003 showed "no significant abnormality" on the right knee. (Tr. at 148.) X-rays taken in December of 2003 showed a "small plantar heel spur" on the right foot/ankle. (Tr. at 147.) In November of 2004, x-rays of Plaintiff's ankles showed the same heel spurs and x-rays of Plaintiff's knees showed "no significant abnormality." (Tr. at 255-56.) In November of 2004, it was noted that Plaintiff's "condition has remained stable with no increase in disability." (Tr. at 247.) By June of 2005, x-rays revealed bilateral spurs with the spur on the right side being the larger of the two. (Tr. at 236.) However, there was no evidence that the spurs caused any erosion of residual functional capacity.

In July of 2005, Plaintiff was diagnosed with "[m]ild degenerative arthritis of both knees," and [d]egenerative arthritis of the mid-thoracic and lumbar spine." X-rays taken at this time showed "mild degenerative changes" in the left shoulder, "mild degenerative changes bilateral knee joints," "no acute subluxation" in the spine, no spondylolysis or spondylolisthesis, but "advanced degenerative changes involving the mid to lower thoracic spine," at L4-5 and L5-S1.

(Tr. at 237-41.) However, as indicated above, the hypothetical contained limitations relevant to these medical impairments and there was no evidence that the impairments eroded Plaintiff's residual functional capacity beyond that evinced in the hypothetical.

I suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence. (*See* Tr. at 226-28.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### c. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837;

*Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

<br>

            s/ *Charles E Binder*
            CHARLES E. BINDER
Dated: August 11, 2010         United States Magistrate Judge

<br>

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: August 11, 2010         By  s/Patricia T. Morris
            Law Clerk to Magistrate Judge Binder